Cite as 2022 Ark. App. 229

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-21-495

|  |  |
|---|---|
| | **Opinion Delivered** May 11, 2022 |
| LITTLE ROCK AMBULANCE AUTHORITY & ARKANSAS MUNICIPAL LEAGUE WORKERS' COMPENSATION TRUST | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| APPELLANTS/CROSS-APPELLEES | [NO. G409832] |
| V. | |
| JAMES BINKLEY | |
| APPELLEE/CROSS-APPELLANT | AFFIRMED ON DIRECT APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL |

## WAYMOND M. BROWN, Judge

Appellants, Little Rock Ambulance Authority and Arkansas Municipal League Workers' Compensation Trust (LRAA), and appellee, James Binkley, appeal the June 17, 2021 opinion of the Arkansas Workers' Compensation Commission (Commission) that reversed the findings of the administrative law judge (ALJ). In reversing, the Commission found that appellee was entitled to a full reimbursement of $8333.33 paid to appellants in an unauthorized third-party settlement, and that appellants failed to prove they were entitled to a credit in the amount of $5139.95 for overpayment of permanent partial-disability (PPD) benefits. Additionally, in the June 2021 opinion, the Commission found that appellee was not entitled to attorney's fees. From that decision, appellants bring this direct appeal. Appellee cross-appeals the denial of attorney's fees in the matter. We affirm on direct appeal and reverse and remand on cross-appeal.

Appellee sustained an admittedly compensable injury on December 16, 2014, as the result of a motor-vehicle accident. At the time of the accident, appellee, employed as a paramedic, was riding in the back of an ambulance when it was struck by a Maumelle Police Department vehicle. At the time of the collision, appellee was standing up, untethered, performing patient care. The impact of the collision caused appellee to be thrust headfirst, at a speed of approximately fifty-five miles an hour, into the front of the ambulance compartment. The parties stipulated that appellee "sustained compensable injuries to his brain, skull, right eye, and carotid artery" in the motor-vehicle accident. The Arkansas Municipal League Workers' Compensation Trust accepted appellee's claim and began paying appropriate benefits.

Appellee retained an attorney who made a demand for policy limits on the City of Maumelle and the Municipal Vehicle Program (MVP). The MVP agreed to pay policy limits. Appellee signed a release of all claims on November 10, 2015, that provided the following:

> That James Binkley & his attorney, McDaniel, Richardson & Calhoun, PLLC in full settlement for and in consideration of the sum of Twenty-Five Thousand and 00/100 $25,000 the receipt and sufficiency of which is hereby remise, release and forever discharge Shane Graham, City of Maumelle and the Municipal Vehicle Program . . . from all liability arising out of an occurrence that happened on or about the 16th day of December 2014 at or near Edgewood Drive, Maumelle, AR.

The MVP issued a check on November 18, 2015, in the amount of $25,000 to appellee and the law firm McDaniel, Richardson & Calhoun. In response, appellee's attorney, Dustin McDaniel, corresponded with Patrice Baker, a representative of the Arkansas Municipal League, on December 3 stating:

> This letter will confirm our telephone conversation yesterday. As you know, Mr. Binkley suffered a catastrophic injury while on the job working for MEMS Ambulance Service. Unfortunately, fault in the accident laid with a Maumelle police department vehicle. Due to

sovereign immunity, Mr. Binkley's compensation was limited to the Arkansas Municipal League automobile policy of $25,000. That money has been paid and is in my trust account.

In order for me to distribute those funds, I need to also provide you with your subrogation interest. It is clear that Mr. Binkley was not made whole by the settlement. As you know, under Ark. Code Ann. § 11-9-410, your interest in this settlement is limited to 1/3 of the recovery, or $8333.33. Of course, if there is any additional recovery, for instance there is a remote possibility of underinsured motorist coverage on the ambulance policy, the Arkansas Municipal League would retain subrogation rights on any such recovery as well.

I intend to distribute money to Mr. Binkley next week. . . .

A check in the amount of $8333.33 was subsequently issued to the Arkansas Municipal League.

Appellee's attorney retained his portion and then paid the balance to appellee.

On July 7, 2016, appellee signed a Form AR–L, "Claimant's Lump Sum Request/Respondent's Position." The Commission approved the lump-sum payment on July 11, 2016, stating:

The claimant's application for a lump sum payment has been approved. The 100% disability rating to the eye, given to Mr. Binkley, entitles him to 105 weeks of benefits. 54.14286 weeks of benefits have accrued at the rate of $617.00 per week, for a total of $33,406.14. The Form AR–L reflects that $33,318.00 of this has been paid, leaving a balance of $88.14 to be paid without discount. Additionally, when the present value multiplier for the remaining 50.85714 weeks, which is 48.22740, is multiplied by the weekly compensation rate of $617.00, the amount owed for future PPD, discounted at 10% compounded annually, is $29,756.30. The 21% disability to the body as a whole, given to Mr. Binkley, entitles him to 94.5 weeks of benefits to be paid at the rate of $463.00 per week. When the present value multiplier for the remaining weeks, subsequent to the above weeks, for the disability to the claimant's eye, which is 77.42551, is multiplied by the weekly compensation rate of $463.00, the amount owed for future PPD, discounted at 10% annually, is $35,848.01. Please consider this letter your authorization to issue a lump sum payment of $65,692.45 ($88.14 + $29,756.30 + $35,848.01). . . .

An issue later arose regarding the disbursement of funds to Arkansas Municipal League and its subrogation rights. Appellee's new counsel, Eddie Walker, contacted the Arkansas Municipal League, requesting that they return the money they received in regard to the third-party settlement,

maintaining that appellee was not made whole by the settlement; therefore, the Municipal League was not entitled to any portion of the $25,000. Additionally, appellants asserted PPD benefits were overpaid due to incorrect calculations for appellee's facial injuries.

A hearing was held on August 27, 2020. In an opinion filed on November 25, the ALJ found that appellants proved they overpaid PPD benefits to appellee. The ALJ also found that appellee failed to prove he was entitled to a refund of moneys his attorney paid in a third-party settlement. Furthermore, the ALJ found that appellee was not entitled to attorney's fees.

Appellee appealed the ALJ's decision to the Commission. The Commission reversed the findings of the ALJ and held

> that the respondents did not prove they were entitled to a credit for an alleged overpayment of permanent partial disability benefits. We specifically find that respondents are not entitled to a credit in the amount of $3500 for facial disfigurement in accordance with Ark. Code Ann. § 11-9-524 (Repl. 2012). The record does not show that the claimant has received a rating for disfigurement, and the Full Commission has not awarded disfigurement pursuant to Ark. Code Ann. § 11-9-524 (Repl. 2012). The Full Commission finds that the claimant is entitled to full reimbursement of $8333.33 paid to the respondents as the result of an unauthorized third-party settlement. We direct the respondents to reimburse this amount to the claimant. The claimant is not barred from receiving a refund of $8333.33 based on the doctrine of estoppel, unclean hands, or laches. Ark. Code Ann. § 11-9-715(a)(B)(ii) (Repl. 2012) provides that attorney's fees shall be allowed "only on the amount of compensation for indemnity benefits controverted and awarded." In the present matter, the Full Commission has not awarded indemnity benefits. Instead, we have ordered reimbursement of monies the claimant's former attorney paid in an unauthorized third-party settlement. Therefore, the claimant's attorney is not entitled to fees for legal services in the present matter.

The parties appeal the decision of the Commission.

In reviewing decisions of the Commission, appellate courts view the evidence and all reasonable inferences in the light most favorable to the Commission's findings, and the decision will

4

be affirmed if it is supported by substantial evidence.[1] Substantial evidence exists if reasonable minds could reach the Commission's conclusion.[2] We do not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission.[3]

We defer to the Commission's findings on what testimony it deems to be credible, and the resolution of conflicting evidence is a question of fact for the Commission.[4] The Commission has the authority to accept or reject medical opinion and to determine its medical soundness and probative force.[5]

On appeal, appellants contend that the Commission's decision was contrary to the law and facts presented. Appellants assert that because appellee agreed to, and facilitated payment of, appellants' subrogation interest, he is now barred from rescinding the agreement. Moreover, appellants argue they are entitled to a credit for PPD overpayment.

First, appellants recognize the Commission's finding that appellee was not made whole by the third-party settlement; therefore, appellants have no right to subrogation. Appellants do not dispute the finding that appellee was not made whole by the settlement funds. However, appellants contend that this finding ignores the fact that the parties reached an agreement as to the subrogation

[1]*Livermore v. Madison Cnty. Judge*, 2014 Ark. App. 617, 447 S.W.3d 130.

[2]*Flynn v. Sw. Catering Co.*, 2010 Ark. App. 766, 379 S.W.3d 670.

[3]*Crossett Sch. Dist. v. Gourley*, 50 Ark. App. 1, 899 S.W.2d 482 (1995).

[4]*J.B. Hunt Transp. Servs. Inc. v. Hollingsworth*, 2016 Ark. App. 279, 497 S.W.3d 197.

[5]*Id.*

issue. Appellants contend that in exchange for the $8333.33, one-third of the $25,000 recovery from the Arkansas Municipal League's automobile policy, they deemed their subrogation interest satisfied. Appellants assert that because there was a binding agreement of the parties, appellee cannot now dissolve the executed agreement. Appellants argue that appellee is bound by the agreement made, and the Commission's decision requiring repayment of the subrogation monies is clear error.

Subrogation is an equitable remedy that rests upon principles of unjust enrichment and attempts to accomplish complete and perfect justice among the parties.[6] Subrogation, in essence, is the substitution of one party for another in the exercise of some legal right.[7] In certain instances, workers'-compensation statutes afford a right of subrogation to compensation carriers. Arkansas Code Annotated section 11-9-410(b)(1) provides that "[a]n employer or carrier liable for compensation under this chapter for injury . . . of an employee shall have the right to maintain an action in tort against a third party responsible for the injury . . . ." The purpose of this statute is to protect the rights of both the compensation carrier and the employee, and in furtherance of that purpose, the proceeds of any compromise settlement of a tort claim are subject to the lien of the employer or the compensation carrier unless the settlement has been approved by a court having jurisdiction or by the Workers' Compensation Commission, after the compensation carrier has been afforded adequate opportunity to be heard.[8] Therefore, an insured's settlement with a third-party

---

[6]*St. Paul Fire & Marine Ins. Co. v. Murray Guard, Inc.*, 343 Ark. 351, 37 S.W.3d 180 (2001).

[7]*Welch Foods, Inc. v. Chicago Title Ins. Co.*, 341 Ark. 515, 17 S.W.3d 467 (2000) (citing *Black's Law Dictionary*, 1140 (7th ed. 1999)).

[8]*Travelers Ins. Co. v. McCluskey*, 252 Ark. 1045, 483 S.W.2d 179 (1972).

defendant is not absolute; instead, the settlement is subject to a court's approval after the carrier has been afforded opportunity to be heard. Even though an insurer's right to subrogation is statutory, that right does not arise until the insured is made whole.[9]

Our supreme court noted that the equitable nature of subrogation is granted an insurer to prevent the insured from receiving a double recovery, and where an insured has been made whole for his loss and is in a position where he or she will recover twice for some of his or her damages, the insurer should not be precluded from employing its right of subrogation.[10]

> An insured's right to subrogation takes precedence over that of an insurer, so the insured must be wholly compensated before an insurer's right to subrogation arises; therefore, the insurer's right to subrogation arises only in situations where the recovery by the insured exceeds his or her total amount of damages incurred.[11]

Here, when appellee disbursed the funds received from the $25,000 third-party settlement, appellants did not have a lien, and appellants did not challenge appellee's contention that the settlement did not make him whole; therefore, appellants' right to subrogation had not arisen. Consequently, the payment cannot be deemed in satisfaction of a subrogation interest.

Moreover, Arkansas Code Annotated section 11-9-410(c)(1) provides:

> Settlement of claims under subsections (a) and (b) of this section must have the approval of the court or of the Workers' Compensation Commission, except that the distribution of that portion of the settlement that represents the compensation payable under this chapter must have the approval of the commission.

---

[9]*Gen. Accident Ins. Co. v. Jaynes*, 343 Ark. 143, 33 S.W.3d 161 (2000).

[10]*Shelter Mut. Ins. Co. v. Bough*, 310 Ark. 21, 834 S.W.2d 637 (1992).

[11]*Franklin v. Healthsource of Ark.*, 328 Ark. 163, 942 S.W.2d 837 (1997).

Arkansas Code Annotated section 11-9-410 clearly provides that disbursement of funds pursuant to subrogation agreements must be approved by the Commission. In this case, as the Commission properly found, the record is absent any demonstration of approval of the settlement by the court or Commission. Court or Commission approval is statutorily required.[12]

Appellants also argue that appellee is estopped from receiving reimbursement of the settlement funds due to the equitable doctrines of laches[13] and unclean hands.[14] A party alleging estoppel must prove it strictly.[15] The record is absent any evidence or allegations that appellee exhibited unclean hands or improperly placed appellants at a disadvantage or prejudiced appellants to their detriment. We find no error in the Commission's finding that appellants failed to prove appellee should be estopped from receiving reimbursement of the $8333.33 third-party settlement funds erroneously paid to appellants.

Appellants next argue they are entitled to a credit in the amount of $5195.35 against any future disability benefits due to appellee based on an overpayment of prior PPD benefits. Appellants state that as a result of the 41 percent body as a whole rating issued by Dr. Barry Baskin, they paid $100,510.45 in disability benefits, after appropriately deducting a portion for the accelerated lump-

---

[12]*See John Garner Meats v. Ault*, 38 Ark. App. 111, 828 S.W.2d 866 (1992).

[13]A party asserting the equitable doctrine of laches as a defense must demonstrate prejudice resulting from a delay in pursuing the claim. *See Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999).

[14]Under the doctrine of unclean hands, a party is prohibited from seeking relief for improper conduct of which he or she is also guilty. *See Shields v. Kimble*, 2010 Ark. App. 479.

[15]*McCluskey, supra*.

sum payments. For purposes of the lump-sum payment, as found in the Form AR–L, appellants accepted Dr. Baskin's assessment and the resulting benefits calculations. Appellants also waived a hearing on the matter; both parties signed the lump-sum-payment request form.

Appellants now claim that after "careful examination" of Dr. Baskin's report, they have discovered that he included ratings for disfigurement and an eye injury that are inconsistent with the Arkansas Workers' Compensation Act. First, we urge that the appropriate time to carefully review such reports is before accepting the validity of disability ratings and the resulting benefit calculations, particularly those in which hearing rights to dispute such assessments are waived.[16]

However, addressing appellants' argument, we find no merit. Appellants do not take issue with appellee's entitlement to a 5 percent whole-person rating due to loss of olfactory nerve function or his entitlement to an 8 percent whole-person impairment for residual mental-status impairment. The aggregate value of these two whole-person-impairment ratings gives appellee entitlement to a 13 percent whole-body-impairment rating. Given appellee's PPD rate of $463 a week, he is entitled to $27,085.50 for loss of olfactory nerve function and mild residual mental-status impairment.

Appellants claim that Dr. Baskin improperly rated appellee's right eye injury as whole-person impairment by assigning him a rating of 24 percent impairment to the body as a whole. Appellants argue that Arkansas Code Annotated section 11-9-521 (Repl. 2012) makes plain that total eye loss equates to 105 weeks of benefits at the total-disability rate. Appellants state that given appellee's total disability rate of $617 a week, he is entitled to $64,785 for the loss of his right eye. Appellants claim that in his report, Dr. Baskin erroneously included a rating of 10 percent body as a whole for

---

[16]Prior to the hearing before the ALJ, the parties agreed to litigate "the extent of the claimant's permanent anatomical impairment."

facial disfigurement that is more than the $3500 maximum allowed. Arkansas Code Annotated section 11-9-524(a) provides:

> The Workers' Compensation Commission shall award compensation for serious and permanent facial or head disfigurement in a sum not to exceed three thousand five hundred dollars ($3,500.00).

Appellants assert that when the $27,085.50 for appellee's olfactory nerve function and mental impairment is combined with the $64,785 for eye loss and the $3500 allowed maximum for facial disfigurement, the total amount of PPD benefits appellee was entitled to is $95,370.50. Appellants claim that they paid appellee a total of $100,510.45, which amounted to an overpayment of $5139.95.

Appellants' contention that PPD benefits due to facial injuries are limited to $3500 pursuant to the above-cited statute is not well taken. Appellants fail to recognize that facial impairment and facial disfigurement are not one in the same. Facial disfigurement refers to a permanent negative change in a claimant's facial appearance. Compensation for such disfigurement is controlled by section 11-9-524(a) and is capped at $3500. As found by the Commission, benefits payable to a claimant for facial impairment is a separate and distinct issue. Specifically, the Commission stated that it "does not interpret Dr. Baskin's assessment of a permanent anatomical impairment to the claimant's face to be synonymous with a rating for disfigurement in accordance with Ark. Code Ann. § 11-9-524 (Repl. 2012)." We agree.

The Commission has adopted the American Medical Association *Guides to the Evaluation of Permanent Impairment*[17] to be used in assessing anatomical impairment.[18] It is the Commission's duty, using the *AMA Guides*, to determine whether the claimant has proved that he is entitled to a permanent impairment.[19] Dr. Baskin referenced the *AMA Guides* by name in support of his determination that appellee was entitled to a rating of 10 percent of the body as whole Class II impairment for the loss of the supporting structure of his face and the deformity of his facial bones and the right orbital structure. We find that, in light of Dr. Baskin's assessment, substantial evidence supports the Commission's finding that the 10 percent rating for facial impairment is supported by objective and measurable physical findings and are also in accordance with the *AMA Guides*. Consequently, we affirm the Commission's finding that appellants did not overpay benefits and therefore are not entitled to a credit against appellee's future benefits in the amount of $5139.95.

Last, appellee asserts on cross-appeal that he is entitled to attorney's fees due to the denial of the credit requested by appellants, the monetary reimbursement appellants were ordered to make to appellee, and for prevailing on appeal to the Full Commission. Appellee contends that the Commission erred in denying attorney's fees on the basis of its determination that it had not awarded indemnity benefits but instead had ordered reimbursement of moneys paid to appellants in an unauthorized third-party settlement.

---

[17](4th ed. 1993).

[18]*See* 009.00.1-099.34 Ark. Admin. Code (WL current with amendments received through Nov. 15, 2021); Ark. Code Ann. § 11-9-522(g) (Repl. 2012).

[19]*Polk Cnty. v. Jones*, 74 Ark. App. 159, 47 S.W.3d 904 (2001).

Arkansas Code Annotated section 11-9-715(a)(B)(ii) states that "fees shall be allowed only on the amount of compensation controverted and awarded." The appellate courts have held that if the fundamental purposes of attorney's-fees statutes are to be achieved, it must be considered that their real object is to place the burden of litigation expenses upon the party that made it necessary.[20]

Equity demands that an insured be made whole before the insurer's right to subrogation arises. In *Logan County v. McDonald*,[21] where the employee had not been made whole by his third-party settlement, we affirmed the Commission's decision that Logan County was liable for a controverted attorney's fee based on the amount it sought for reimbursement out of that settlement.

Here, appellants did not dispute appellee's claim that he had not been made whole by the third-party settlement agreement; therefore, appellants' subrogation rights never arose. Thus, appellee incurred legal expenses in the hearing to defend the benefits he had been awarded in the Workers' Compensation Commission case.

Direct proof of controversion exists where the appellee must incur legal expenses to defend his award of disability benefits.[22] In *Liberty Mutual Insurance Company v. Youngblood*,[23] this court held that, "[u]nlike the facts in *Burton v. Chartis Claims, Inc.*, 2014 Ark. App. 47, where the insurance carrier's 'mere filing of the intervention' and subsequent waiver of its subrogation lien without ever

---

[20]*Ark. Game & Fish Comm'n v. Gerard*, 2018 Ark. 97, 541 S.W.3d 422 (citing *Cleek v. Great S. Metals*, 335 Ark. 342, 981 S.W.2d 529 (1998)).

[21]90 Ark. App. 409, 206 S.W.3d 258 (2005).

[22]*Harvest Foods v. Washam*, 52 Ark. App. 72, 914 S.W.2d 776 (1996).

[23]2020 Ark. App. 398, 609 S.W.3d 468.

going to a made-whole hearing did not amount to controversion, Youngblood incurred legal expenses defending his settlement award in a made-whole hearing."

Appellants' claim that it was entitled to, based upon its subrogation interest, the moneys received from the third-party settlement, along with its claim that it overpaid PPD benefits, was an attempt to recoup funds already paid to appellee in the workers'-compensation case. Hence, we hold that this was a controversion on which attorney's fees can attach; it had the equivalent effect of requiring appellee to defend the benefits he received and incur legal expenses as if appellants had controverted the benefits at the outset. Accordingly, we reverse the Commission's denial of attorney's fees related to appellants' reimbursement of $8333.33 from the third-party settlement and the finding that appellants did not overpay benefits in the amount of $5139.95.

Additionally, Arkansas Code Annotated section 11-9-715(b)(1) states, "If the claimant prevails on appeal the attorney for the claimant shall be entitled to additional fee at the full commission and appellate court levels in addition to the fees provided in subdivision (a)(1) of this section."[24] Here, the Commission denied appellants' request for an overpayment credit against any potential benefits appellee might become entitled to in the future and also ruled against appellants concerning the subrogation payment. Because the Commission found in appellee's favor in all aspects, appellee was entitled to attorney's fees for prevailing on appeal in addition to the attorney's fees stemming from the controverted benefits.

---

[24]Subdivision (a)(1)(B) states that attorney's fees shall be 25 percent of compensation for indemnity benefits payable to the injured employee or dependents of a deceased employee. Subdivision (a)(1)(B)(ii) provides, "The fees shall be allowed only on the amount of compensation for indemnity benefits controverted and awarded."

13

Given the standard of review and viewing the evidence in the light most favorable to the Commission's findings along with the Commission's reliance on undisputed facts in its reasoning and analysis, we find that the decision as to the third-party-settlement payment and the alleged overpayment of benefits is supported by substantial evidence. However, we find that the Commission erred in denying appellee attorney's fees incurred in defending his right to benefits he had previously received. Accordingly, we reverse and remand to the Commission for a determination of attorney's fees consistent with this opinion.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

BARRETT and VAUGHT, JJ., agree.

*Worley, Wood & Parrish, P.A.*, by: *Jarrod S. Parrish*, for appellants/cross-appellees.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellee/cross-appellant.

14