Teresa DAVIS *v.* Corliss M. WILLIAMSON

03-682 194 S.W.3d 197

Supreme Court of Arkansas
Opinion delivered September 30, 2004

*Ann C. Donovan*, for appellant.

*Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *John E. Tull, E.B.Chiles IV*, and *Brandon B. Cate*, for appellee.

JIM HANNAH, Justice. Teresa Ann Davis appeals a decision of the Washington County Circuit Court denying her motion for attorney's fees. We find no abuse of discretion and affirm. We have jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(7) (2004), a subsequent appeal following an appeal decided in the Supreme Court. *Davis v. Williamson*, 353 Ark. 225, 114 S.W.3d 216 (2003).

### Facts

On July 31, 1996, a joint petition to establish paternity was filed. The petition sought a finding and order of paternity as well as an order on custody and child support. Paternity was not contested, and on April 27, 1998, an order establishing Williamson as the father of Chasen Williamson was entered. In the April 27, 1998, order, Davis was granted custody, and the issue of attorney's fees, as well as a number of other issues, were expressly reserved for

later hearings. A final order on all issues except attorney's fees was entered September 11, 2002. This order resolved current support, arrearage, witness fees, and visitation. Davis attempted to appeal the September 11, 2002, decision, but failed to perfect her appeal. Her motion for rule on the clerk was denied. *See Davis, supra.* While Davis obtained custody in this paternity action, she failed to obtain the amount of child support, arrearage and other relief she sought.

A motion for interim attorney's fees was filed August 16, 2001, and denied by an order entered December 18, 2001. Davis again filed a motion for attorney's fees at the close of the case September 25, 2002, seeking $118,943.00 in attorney's fees, which was denied in the order entered November 20, 2002.

Davis appeals only the November 20, 2002, order. In the November 20, 2002, order, the circuit court noted that fees could be granted under Ark. Code Ann. § 9-10-109 (Repl. 2002), but that fees are granted at the discretion of the circuit court. The circuit court also noted that although Davis argued that disparity in income should require a grant of fees, that reason alone is not a basis for an award of attorney's fees. The circuit court then evaluated Ann Donovan's legal services, Davis's counsel. The circuit court stated that beyond complex financial issues, this case "presented straight forward legal issues."

Davis appeals the denial of the motion for attorney's fees, arguing that throughout the course of the paternity case resulting in the September 11, 2002, order, the circuit court exhibited bias against Davis, and that this bias in the paternity case constitutes proof that the circuit court's decision to rule against Davis on the motion for attorney's fees was also the result of bias. Davis argues that "Taken as a whole the court appeared to be an adversary of the appellant and her Orders concluding this case reflect that."

### Interim Attorney's Fees

In the single heading of her twenty-five page argument, Davis asserts that the circuit court abused its discretion in failing to grant her August 16, 2001, Motion for Interim Attorney's Fees and in failing to grant an award of attorney's fees at the conclusion of the case. However, in her motion for attorney's fees at the conclusion of the case Davis seeks attorney's fees from the beginning of the case onward and states that total fees and costs sought for the case amount to $118,943.00. Therefore, this motion again seeks the fees Davis alleges the circuit court failed to grant

earlier in denying the motion for interim fees, making denial of the motion for interim fees moot. We do not address moot issues. *See, e.g., Benton v. Bradley,* 344 Ark. 24, 37 S.W.3d 640 (2001). To the extent that Davis may assert denial of the motion for interim fees shows bias of the circuit court, that issue is addressed in the following sections of this opinion.

### Attorney's Fees in Paternity Actions

Davis argues that the circuit court abused its discretion in denying her motion for attorney's fees because acts by the circuit court prior to filing the motion for attorney's fees show bias and because the circuit court erred in determining that there was a lack of documentation for services, inflated billings, and a lack of expertise. Davis more specifically argues that statements, decisions, and actions taken by the circuit court prior to Davis filing the motion for attorney's fees are relevant to show an abuse of discretion in later denying her motion for attorney's fees. Davis points out in excess of twenty examples of alleged bias from the trial and hearings resulting in the September 11, 2002, order settling custody, support, and other issues relating to the paternity suit.

The parties cite *Green v. Bell,* 308 Ark. 473, 826 S.W.2d 226 (1992), a paternity case, on the issue of attorney's fees. We find the following relevant language in *Green*:

> Finally, appellant urges that the award of an attorney's fee of $40,000 was an abuse of the court's discretion. He recognizes that the court has broad discretion to award attorney's fees, *Wilson v. Wilson,* 294 Ark. 194, 741 S.W.2d 640 (1987), but maintains that the award is excessive. We stated our rule in *Lytle v. Lytle,* 266 Ark. 124, 583 S.W.2d 1 (1979).

*Green,* 308 Ark. at 480. There is no discussion in *Green, supra,* of the right to attorney's fees in paternity cases, making the case only marginally helpful in showing that attorney's fees may be granted.

With regard to attorney's fees, this court recently stated, "Arkansas follows the American Rule that attorney's fees are not chargeable as costs in litigation unless permitted by statute." *Cotten v. Fooks,* 346 Ark. 130, 55 S.W.3d 290 (2001). Statutory authority for attorney's fees in paternity actions is found in Ark. Code Ann. § 9-10-109 (Repl. 2002) and by Ark. Code Ann. § 9-27-342 (Supp. 2003). *See Beavers v. Vaughn,* 41 Ark. App. 96, 849 S.W.2d 6 (1993).

Arkansas Code Annotated Section 9-27-342(d) (Repl. 1998) provides:

> (d) Upon an adjudication by the court that the putative father is the father of the juvenile, the court shall follow the same guidelines, procedures, and requirements as established by the laws of this state applicable to child support orders and judgments entered upon divorce. The court may award court costs and attorney's fees.

Arkansas Code Annotated Section 9-10-109(a) (Supp. 2001) provides in pertinent part:

> subsequent to a finding by the court that the putative father in a paternity action is the father of the child, the court shall follow the same guidelines, procedures, and requirements as set forth in the laws of this state applicable to child support orders and judgments entered by the chancery court as if it were a case involving a child born of a marriage in awarding custody, visitation, setting amounts of support, costs, and attorney's fees . . . .

Ark. Code Ann. § 9-10-109 (Supp. 2001). Thus, procedure applicable to child support orders entered upon divorce applies to a motion on attorney's fees in a paternity action. The decision to award attorney's fees and the amount of an award are discretionary determinations that will be reversed only if the appellant can demonstrate an abuse of discretion. *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993).

### Alleged Bias of the Circuit Court

Davis asserts that evidence of alleged bias of the circuit court in deciding child support, arrearage, and other issues, is relevant to show bias later in the decision on attorney's fees. We are told at the beginning of Davis's brief that "appellant submits that she will demonstrate the biased mind-set of the court in the case in chief, which also shows the likelihood there would have been success on the merits." Later we are told, "Taken as a whole the court appeared to be an adversary of the appellant and her Orders concluding this case reflect that." Davis thus argues that a showing of bias in the case prior to filing a motion for attorney's fees is relevant to show bias and an abuse of discretion in the decision on the fees. Davis argues that the alleged bias in the "case in chief" is relevant to show an abuse of discretion.

 Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

would be without the evidence. Ark. R. Evid. 401; *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003).

We have considered every allegation of bias argued by Davis and include by way of example several of Davis's assertions.

### 1. Statement by the circuit court about $5000 per month as support

■ Davis states, "The trial court demonstrated bias and abused her discretion in this matter when she commented that no one child needs more than $5000 in child support." In the abstract, we are cited to page 1448 of the record where we find: "At that time, the Court did make an announcement to the parties, or the parties' counsel, at least that the Court could see no reason why a child of this age would need more than $5000 for living expenses." However, in this same discussion two pages later the circuit court stated:

> What I told counsel in chambers was that based upon the reading of both the trial briefs, the testimony of the expert witness so far, that I didn't feel that I was going to be giving the petitioner in this case fifteen percent of Mr. Williamson's income. And I stated that I had not heard all the evidence and I want to hear all the evidence and I might change my mind after I heard all the evidence that was presented in this court . . . I have not formulated an opinion . . . I have not heard all the evidence and I'm certainly open to hearing all the evidence.

Davis argues, in essence, that the circuit court prejudged the issue of the proper amount of child support before the evidence was presented and that this constitutes an abuse of discretion in denying attorney's fees. The record clearly shows that the circuit court had not prejudged the amount of child support, but rather stated, "I have not formulated an opinion. . . ."

### 2. Continuous Social Commentary by the Circuit Court

■ ■ Davis accuses the circuit court of continuously making "social commentary." Davis provides no cite to the abstract, or any cite whatever, to allow this court to even consider the assertions. However, we note the following comments by the circuit court in the September 11, 2002, final order on custody and support:

> Ms. Davis testified that she used her savings to move to Fayetteville this summer. Ms. Davis has not handled "the money given to her

in an exemplary manner" as argued by counsel, nor has Ms. Davis had to be "thrifty" and was just "getting by" on $5000 per month as argued.

It is apparent that the circuit court was concerned about the use of money in caring for Chasen, and there is nothing presented by Davis to show bias, or indeed imply anything beyond concern for the use of funds.

Ms. Davis, however, further argues:

> The court in questioning even comments that it might be okay for Mr. Williamson to spend $1000.00 on shoes but it certainly was not alright for Ms. Davis to purchase a $3000 TV on her salary. The court is dictating the social and financial climate Chasen Williamson is to grow up in.

Davis refers this court to page 189 of the abstract in support of this claim where we find the following questioning of witness Cheryl Shuffield by the circuit court:

Q. My other question is did you do any sort of analysis here? You have Mr. Williamson who makes a lot of money and you know, he spends maybe a $1,000 on a pair of shoes and that might sound bad.

A. Uh-huh.

Q. But when you look at how much those shoes are versus how much money he's making, it's a little different.

A. Sure.

Q. Where you have Ms. Davis who makes less but she goes out and spends $2000 on a TV when she was not even making, well, she was making $35,000 at that point, I just wondered if there's some analysis that has been done to compare the two sorts. We're talking a lot about standard of living and that would be helpful, but you haven't done that analysis?

A. No, Your Honor, I haven't.

Contrary to Davis's argument, this is hardly a comment by the circuit court that it is "okay" for Williamson to pay $1000 for a pair of shoes but improper for Davis to spend $2000 on a television. It is obviously

a question by the circuit court in an attempt to determine what analysis had been undertaken on the issue of standard of living.

### 3. Keeping the court file in the Circuit Court Judge's Office

██ ██ Davis apparently asserts that the circuit court was manipulating the record to favor Williamson. The record provides:

> MR. WATSON: Judge, would the Court consider the possibility of awarding some interim attorney's fees or attorney's fees pending the outcome of the case. I think, actually there's a motion pending for those attorney's fees. I don't know that the Court has actually ruled on that.

> THE COURT: I haven't seen it and the file's incomplete because I've had the file for a couple of months now and probably the clerk's office is really mad at me, so I've not seen it. But Mr. Tull, do you have anything to add?

There is nothing in the above quote to show a motive to keep documents and pleadings out of the file so it can be manipulated in Williamson's favor. This court finds no merit to Davis's claim of bias in the "case in chief." Furthermore, we are not convinced that the evidence of alleged bias in the "case in chief" was relevant to the question of whether the circuit court abused its discretion in denying the motion for attorney's fees.

### Alleged Abuse of Discretion in Deciding the Motion

Davis does, however, argue an abuse of discretion in deciding issues presented by the motion on attorney's fees. She argues that the circuit court abused its discretion in failing to recognize that this case presented difficult financial issues and was a complex case involving "the Statute of Limitations, unconstitutionality of the administrative order, equitable defenses of laches, waiver, equitable estoppel, and a contested hearing on child custody." The circuit court concluded to the contrary, that aside from the financial matters, this case presented "straight forward issues." Davis also notes that several "extraordinary motions" were filed in this case making costs and fees justifiably higher.

██ Davis argues that the circuit court failed to properly consider disparity in income in denying attorney's fees. However, disparity in income is discussed in the order. The circuit

court found that while disparity in income is a factor to be considered, it was not determinative in this case. Davis additionally argues that the circuit court erred in finding that counsel failed to provide "total submission of bills." According to Davis, it is "evident" that certain activities are included in the billings, such as presumed follow-up activities based on the activity actually listed. The circuit court found that the billings were inadequate and that some billings were inflated. Examples of deficiencies were given in the order. Davis next argues that the hourly fees she and those she hired charged are reasonable. The circuit court denied the fees in total. Hourly fees are not discussed in the order.

Davis also argues:

> The court erred in her attorney fee Order in the following respects: The issue of attorney's fees was reserved from the hearing held in 1997, not from 2001 forward. In as much as the court had been unable to schedule the continuation of this hearing until 2001, the parties agreed that Mr. Williamson would pay a partial temporary attorney fee of $5000 in the year 2000. The only other award was $3000 out of a $23,552.50 expert witness fee.

No proof of any agreement on fees is offered. Davis also states, "At the time this decision was rendered Ms. Davis was unemployed and a student; she had been employed and was earning $31,123, which is misstated in the Order." The order states that Davis' employment status is based on the "most recent financial affidavit" of Davis on earnings at the time of the issue of child support. Davis offers no proof of this not being so. Davis next argues that a great deal of time was spent in preparation for trial and that the circuit court could not know how long letters were or how long it took to review matters and do research. Davis argues that she need not provide actual billing of hours. She cites this court to *Deaton v. Deaton*, 11 Ark. App. 165, 668 S.W.2d 49 (1984) for this proposition. The relevant language from the case is:

> The second point raised by the appellant is that the chancellor erred in awarding additional attorney's fees. He bases this argument on the fact that the appellee did not provide any documentation as to the time spent on the case by her attorney. Attorney's fees are a matter for the discretion of the trial court, and, absent an abuse of discretion, we will not reverse his decision in that regard. In the case at bar, the chancellor had the opportunity to observe the parties

and, as the chancellor noted, the appellant was extremely uncoop-
erative in adhering to any of the court's orders. We find no abuse of
discretion on the part of the chancellor. Further, this issue was not
raised before the trial court nor was any documentation requested.

*Deaton,* 11 Ark. App. at 166. *Deaton* states it is not an abuse
of discretion to grant fees in the absence of documentation where
the judge has observed the work and documentation was not
requested. Davis provided documentation, but the circuit court
found it was inadequate and exhibited problems in inflated billings
and otherwise. The circuit court was of the opinion that counsel's
billings were unreliable, that too much time was spent on a
number of types of items, and that counsel exhibited a lack of
expertise. The circuit court evaluated counsel's legal services in the
order on attorney's fees, noting the following examples:

1. Poor record keeping on billings as noted by Davis's own expert;

2. Inflated billings, $750 for review of an order, $350 for review of
a letter;

3. Failure to bring copies of exhibits to trial for opposing counsel;

4. Raising the issue in open court of the nature of Davis and
Williamson's sexual relationship after paternity had already been
established;

5. Failure to understand what a proffer was;

6. Further inflated times on billings;

7. Lack of proper documentation;

8. Request for reimbursement of improper items as part of fees;

9. Lack of dates when work was done;

10. Vague billings, such as for "research;"

11. Unreadable entries in billings; and

12. $450 for a single photo.

The circuit court looked to *Paulson v. Paulson,* 8
Ark. App. 306, 652 S.W.2d 46 (1983) for the factors to be
considered in determining the amount, if any, to be awarded in

attorney's fees. We first note that the factors in *Paulson* are very similar to the factors set out in *Chrisco v. Sun Industries, Inc.,* 304 Ark. 227, 800 S.W.2d 717 (1990), with one exception. In the context of domestic relations cases, the financial abilities of the parties are also considered. Disparity in incomes is a relevant factor for the circuit court to consider, but standing alone it will not justify an award of attorney's fees. *Scroggins v. Scroggins,* 302 Ark. 362, 790 S.W.2d 157 (1990). The relevant *Chrisco* factors are:

1. Experience and ability of the attorney;

2. The time and labor required to perform the legal service properly;

3. The amount involved in the case and the result obtained;

4. The novelty and the difficulty of the issues involved;

5. The fee customarily charged in the locality for similar legal services;

6. The time limitations imposed on the client or by the circumstances; and

7. That the acceptance of the particular employment will preclude other employment by the lawyer.

*Chrisco,* 304 Ark. at 229. While the decision to award attorney's fees and the amount awarded are reviewed under an abuse of discretion standard, factual findings of fact by a circuit court on the existence of the *Chrisco* factors is reviewed under a clearly erroneous standard of review. *See, e.g., Phi Kappa Tau Housing Corp. v. Wengert,* 350 Ark. 335, 86 S.W.3d 856 (2002). When reviewing findings of fact by a circuit court, this court uses a clearly erroneous standard. *Butt v. The Evans Law Firm,* 351 Ark. 566, 98 S.W.3d 1 (2003). The only factor that was not considered by the trial court was the preclusion of other employment by the lawyer. No argument about loss of other employment was made in this case. The finding of the circuit court on the factors was not clearly erroneous.

 This court has considered all assertions of abuse of discretion in denying the motion for attorney's fees. The circuit court considered the proper factors in deciding Davis's attorney's fee motion. Davis fails to show an abuse of discretion by the circuit court.