Cite as 2020 Ark. App. 398

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-19-970

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY | **Opinion Delivered:** September 16, 2020 |
| APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BCV-11-131] |
| V. | |
| CHARLIE YOUNGBLOOD | |
| APPELLEE | HONORABLE TONYA M. ALEXANDER, JUDGE |
| | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Liberty Mutual Insurance Company ("Liberty") appeals the Mississippi County Circuit Court's order granting appellee Charlie Youngblood's attorneys' fees. On appeal, Liberty asserts that the circuit court's ruling was in error because the fees were not supported by law and that Liberty did not controvert the amounts that had already been paid. We affirm.

The basic facts of this case are not in dispute. On September 15, 2008, Youngblood was an employee of Lexicon, Inc., a subcontractor of Nucor Corporation. Youngblood was injured during the course and in the scope of his employment with Lexicon, Inc., when a piece of steel fell from a crane onto him, causing significant injuries. Liberty was the workers'-compensation carrier for Lexicon and paid benefits to Youngblood totaling $83,074.82 in medical benefits and $31,220.55 in indemnity payments.

Youngblood filed a third-party action in the Circuit Court of Mississippi County alleging the injury was caused by the negligence of Nucor-Yamato Steel Company, Barnhart Crane & Rigging Company and James Quinn. Defendant Nucor-Yamato Steel Company was granted summary judgment in January 2012. On May 6, 2014, Liberty filed a petition in intervention in Youngblood's action against the remaining defendants. In its petition, Liberty asserted a subrogation lien pursuant to Arkansas Code Annotation section 11-9-410(b) (Repl. 2012) on any amounts recovered from the defendants.

Youngblood and the defendants entered into a confidential settlement agreement in October 2018. Youngblood provided Liberty with the settlement information and requested that Liberty withdraw its subrogation lien because Youngblood had not been made whole by the settlement. However, Liberty did not withdraw its lien. In December 2018, Youngblood filed a motion to void the lien and dismiss Liberty from the case. Liberty responded to Youngblood's motion and requested a "made-whole" hearing. On May 6, 2019, the circuit court held a made-whole hearing wherein both parties presented oral and written arguments. In its written order issued May 9, the circuit court found that Youngblood was not made whole by the settlement and entered an order dismissing Liberty from the case with prejudice. Youngblood then requested attorneys' fees under Arkansas Code Annotated section 11-9-715 arguing that Liberty's assertion of a subrogation lien was a controversion of the claim. Liberty filed a response objecting to the request. On September 4, 2019, the circuit court found that Youngblood was entitled to recover attorneys' fees from Liberty pursuant to Arkansas Code Annotated section 11-9-715 and entered an order for the payment of the fees based upon the $31,220.55 indemnity claimed and controverted.

This court reviews issues of statutory interpretation de novo and is not bound by the circuit court's determination. *Brock v. Townsell*, 2009 Ark. 224, at 8, 309 S.W.3d 179, 185. However, we will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. *Cockrell v. Union Planters Bank*, 359 Ark. 8, 14, 194 S.W.3d 178, 182 (2004). The basic rule of statutory construction is to give effect to the intent of the legislature. *Brock*, 2009 Ark. 224, 309 S.W.3d 179. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* This court construes the statute so that no word is left void, superfluous, or insignificant and gives meaning and effect to every word in the statute, if possible. *Id.* However, we will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Id.*

A statute is considered ambiguous if it is open to more than one construction. *Pulaski Cnty. v. Ark. Democrat-Gazette, Inc.*, 370 Ark. 435, 450–51, 260 S.W.3d 718, 729 (2007). When a statute is ambiguous, this court must interpret it according to legislative intent, and our review becomes an examination of the whole act. *Helena-W. Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 580, 268 S.W.3d 879, 884 (2007). In reviewing the act in its entirety, this court will reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Simpson v. Cavalry SPI, LLC*, 2014 Ark. 363, at 4, 440 S.W.3d 335, 338.

Liberty argues that the circuit court erred by awarding attorneys' fees to Youngblood. Specifically, Liberty argues that Arkansas Code Annotated section 11-9-715 does not allow attorneys' fees to be awarded outside of proceedings before the Workers' Compensation Commission. Youngblood disputes that claimants have diverging rights depending on whether the Commission or a circuit court hears the case. Liberty properly notes that the statute neither expressly provides for, nor expressly prohibits, an award of attorneys' fees in cases where the claimant has been required to defend his award in a separate civil action. However, we are not persuaded by Liberty's contention that the statute does not allow for the award of attorneys' fees outside of proceedings in front of the Commission. Notwithstanding the principle of strict construction, Liberty's narrow interpretation of the statute would lead to the absurd consequence of allowing for attorneys' fees when the employer asserts a subrogation lien in front of the Commission but not when the employer opts to bring the same claim in circuit court. *Brock*, 2009 Ark. 224, 309 S.W.3d 179.

Following amendments to the statute in 1993, the appellate courts have consistently held that if the fundamental purposes of attorneys'-fees statutes are to be achieved, it must be considered that their real object is to place the burden of litigation expenses upon the party that made it necessary. *Ark. Game & Fish Comm'n v. Gerard*, 2018 Ark. 97, at 9, 541 S.W.3d 422, 428 (citing *Cleek v. Great S. Metals*, 335 Ark. 342, 345, 981 S.W.2d 529, 530–31 (1998)).

As an intervenor asserting a subrogation lien in the third-party lawsuit, Liberty was provided with Youngblood's medical information as well as the confidential settlement information. However, Liberty refused to withdraw its lien after the settlement agreement

4

had been finalized. Not until Youngblood's attorney filed a motion to dismiss Liberty from the lawsuit did Liberty request a made-whole hearing. At the made-whole hearing, Youngblood was required to incur legal expenses to preserve the benefits he had been awarded and to force Liberty to release its lien. Based on the foregoing, we hold that under these circumstances, the circuit court had the authority to award attorneys' fees under Arkansas Code Annotated section 11-9-715.

Liberty next argues that even if the circuit court had the authority to award attorneys' fees, it was improper in this case because no claim had been controverted. Specifically, Liberty argues that its assertion of a subrogation lien, whether or not the claimant was made whole, does not amount to a controversion of a claim.

Equity requires that an insured be made whole before the insurer's right to subrogation arises. In *Logan County v. McDonald*, 90 Ark. App. 409, 206 S.W.3d 258 (2005), we affirmed the Commission's decision that the employee had not been made whole by his third-party settlement and that Logan County was liable for a controverted attorneys' fee based upon the amount it sought for reimbursement out of that settlement.

In the present case, Liberty claimed that Youngblood had been made whole and that it was entitled to assert its right of subrogation with regard to the proceeds of the third-party settlement agreement. However, the circuit court determined that Youngblood had not been made whole by the settlement agreement; therefore, Liberty's right to subrogation never arose. Consequently, Youngblood incurred legal expenses in the made-whole hearing to defend the benefits he had been awarded in the Workers' Compensation Commission case, which Liberty had paid.

Direct proof of controversion is where the appellee must incur legal expenses to defend his disability benefits award. *Harvest Foods v. Washam*, 52 Ark. App. 72, 80–81, 914 S.W.2d 776, 780–81 (1996); *see also Aluminum Co. of Am. v. Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976); *Cagle Fabricating & Steel, Inc.*, 43 Ark. App. 79, 861 S.W.2d 114. Unlike the facts in *Burton v. Chartis Claims, Inc.*, 2014 Ark. App. 47, where the insurance carrier's "mere filing of the intervention" and subsequent waiver of its subrogation lien without ever going to a made-whole hearing did not amount to controversion, Youngblood incurred legal expenses defending his settlement award in a made-whole hearing. Liberty's subrogation claim was, at its core, an effort to claw back funds it had already paid Youngblood in the Workers' Compensation Commission case. We hold this was a controversion upon which attorneys' fees can be awarded; it had the same effect of requiring Youngblood to incur legal expenses as if Liberty had controverted the benefits at the outset. Accordingly, we affirm.

Affirmed.

GRUBER, C.J., and KLAPPENBACH, J., agree.

*Franden, Farris, Quillin, Goodnight + Roberts*, by: *Jason Goodnight*, for appellant.

*Law Office of Phyllis B. Eddins, PLLC*, by: *Phyllis B. Eddins*, for appellee.

6